**Nos. 18-15431, 18-15887**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

CONSUMER FINANCIAL PROTECTION BUREAU,

*Plaintiff-Appellee/Cross-Appellant,*

v.

NATIONWIDE BIWEEKLY ADMINISTRATION, INC.; LOAN PAYMENT
ADMINISTRATION LLC; DANIEL LIPSKY,

*Defendants-Appellants/Cross-Appellees.*

On Appeal from the United States District Court
for the Northern District of California
Hon. Richard Seeborg
No. 3:15-cv-02106

---

## DEFENDANTS' OPENING SUPPLEMENTAL BRIEF
## ON RECENT CASES

---

Helen Mac Murray
Lisa A. Messner
Mac Murray & Shuster, LLP
6525 West Campus Oval, Suite 210
New Albany, OH 43054
hmacmurray@mslawgroup.com
Telephone: (614) 939-9955
Fax: (614) 939-9954

James R. Saywell
H. Cole Hassay
JONES DAY
901 Lakeside Avenue East
Cleveland, Ohio 44114
Telephone: (216) 586-3939
Fax: (216) 579-0212
jsaywell@jonesday.com

*Counsel for Defendants,
Appellants/Cross-Appellees*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................2

I.    THE CFPB'S UNCONSTITUTIONAL STRUCTURE REQUIRES
DISMISSAL. ......................................................................................3

    A.    The CFPB's Budgetary Independence Violates the Constitution
and Requires Dismissal. ........................................................3

    B.    The CFPB Director's For-Cause Removal Restriction Violates
the Constitution and Requires Dismissal. .............................9

II.    THE COURT SHOULD REJECT THE CFPB'S CROSS-APPEAL
ARGUMENTS RELATING TO RESTITUTION.......................................15

    A.    A District Court Has Discretion Under the CFPA Relating to
Restitution. ...........................................................................15

    B.    The District Court Acted Within its Discretion in Denying
Restitution. ...........................................................................17

CONCLUSION..........................................................................................19

# TABLE OF AUTHORITIES

**Page**

CASES

*CFPB v. All Am. Check Cashing, Inc.*,
    33 F.4th 218 (5th Cir. 2022) ........................................................................*passim*

*CFPB v. Nat'l Collegiate Master Student Loan Tr.*,
    No. 17-cv-1323, 2021 WL 1169029 (D. Del. Mar. 26, 2021) ...........................12

*CFPB v. Seila Law*,
    997 F.3d 837 (9th Cir. 2021) ........................................................................*passim*

*Collins v. Yellen*,
    141 S. Ct. 1761 (2021) ...................................................................10, 11, 13, 14

*FEC v. NRA Pol. Victory Fund*,
    513 U.S. 88 (1994) ............................................................................................10

*FEC v. NRA Pol. Victory Fund*,
    6 F.3d 821 (D.C. Cir. 1993) ...............................................................................8

*NLRB v. Noel Canning*,
    573 U.S. 513 (2014) ............................................................................................7

*PHH Corp. v. CFPB*,
    839 F.3d 1 (D.C. Cir. 2016) ..............................................................................12

*Reeside v. Walker*,
    52 U.S. 272 (1850) ..............................................................................................6

*Seila Law v. CFPB*,
    140 S. Ct. 2183 (2020) .................................................................................*passim*

*State of Ohio v. Nationwide Biweekly Admin.*,
    No. 2008 CV 0678 (Greene Cty, Feb. 10, 2010) ..............................................13

# TABLE OF AUTHORITIES
(continued)

**Page**

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998)........................................................................10

*U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.,*
    665 F.3d 1339 (D.C. Cir. 2012)...........................................................5

*W. Radio Servs. Co. v. Qwest Corp.,*
    678 F.3d 970 (9th Cir. 2012) ..............................................................8

**CONSTITUTION AND STATUTES**

12 U.S.C. § 5497(a) .............................................................................4

U.S. Const. Article I, § 9, cl. 7..............................................................3

**OTHER AUTHORITIES**

*The CFPB Strategic Plan, Budget, and Performance Plan and Report*
    81 (Apr. 2013)..................................................................................4

Kate Berry, *In Tell-All, Ex-CFPB Chief Cordray Claims Trump
    Nearly Fired Him*, AMERICAN BANKER (Feb. 27, 2020) ....................................12

Kayla Tausche, *Trump Wants to Sack Consumer Chief but Is Afraid of
    Turning Him into a Hero for the Left*, CNBC (Nov. 13, 2017)..........................12

**INTRODUCTION**

Nationwide Biweekly and its small-business owner Dan Lipsky have always been the underdogs in this case. Ever since then-Ohio Attorney General Richard Cordray came after them over a dozen years ago, and then again when Cordray reprised his role on behalf of the CFPB, Lipsky has been fighting—and praying—for what at times has seemed like an unlikely victory, not unlike David against Goliath. But now, this case allows David to have one more throw. And this time, there should be no "resurrect[ing] Goliath on the battlefield so that he can defeat David." *CFPB v. Seila Law*, 997 F.3d 837, 839 (9th Cir. 2021) (Bumatay, J., dissenting from the denial of en banc review).

**I.** For at least three reasons, Nationwide is entitled to "relief from the harms inflicted by an unaccountable and unchecked federal agency." *Id.* at 840.

*First*, the CFPB lacked Article III standing to sue. *See id.* at 842 n.3.

*Second*, the CFPB's "historically unique [funding] structure," "doubly removed from congressional review," "violates the separation of powers." *CFPB v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 221 (5th Cir. 2022) (en banc) (Jones, J., concurring). This constitutional violation requires dismissal, independent of the violation recognized by *Seila Law*. This Court "decline[d] to consider" this issue in *CashCall*, but that was only because the defendant there "wait[ed] until long after oral argument," and "more than eight years after th[e] litigation" began, "to raise

1

th[e] theory." 35 F.4th 734, 743 (9th Cir. 2022). Nationwide, however, raised this theory below and here, and will elucidate it much more in these briefs.

*Third*, the *Seila Law* violation, properly understood, independently requires dismissal. *See* 997 F.3d at 839-45 (Bumatay, J., dissental). And despite recent cases "permit[ting] the CFPB to retroactively gift itself power that it lacked," *id.* at 845; *see, e.g.*, *CashCall*, 35 F.4th 734, a path still exists to remedy Nationwide's "here-and-now injury," even under *CashCall*'s erroneous reasoning.

**II.** Recent cases, if anything, show that the CFPB's cross-appeal lacks merit. *CashCall* confirms that this Court reviews the denial of restitution for "abuse of discretion," *id.* at 749, and *Liu* refutes the CFPB's sweeping view of restitution.

## ARGUMENT

Following this Court's order (Doc. 106), this brief is limited to areas affected by *Seila Law*, *CashCall*, and other recent cases. Nationwide has a number of other arguments, *see especially* Third-Step Br. 4-28, that we continue to press and would appreciate oral argument on if the arguments in this brief do not persuade.

But the arguments in this brief should persuade. They confirm that the CFPB is unconstitutionally structured and that, try as it might, the CFPB cannot avoid dismissal of this enforcement action.

## I.    THE CFPB'S UNCONSTITUTIONAL STRUCTURE REQUIRES DISMISSAL.

This panel well knows about *Seila Law*, including from the parties' supplemental briefs. Docs. 84, 87, 93; *see also* 997 F.3d at 839-45 (Bumatay, J., dissental). Cases since *Seila Law*, discussed in Section I.B below, affected some of those arguments. But there is an independent constitutional problem with the CFPB, bolstered by a recent Fifth Circuit en banc case, that also requires dismissal.

### A.    The CFPB's Budgetary Independence Violates the Constitution and Requires Dismissal.

An esteemed group of Fifth Circuit judges recently explained what Nationwide has argued here: "[T]he Bureau's ability to fund itself without Congressional oversight" is unconstitutional, and it requires dismissal. First-Step Br. 81-82; *see All American*, 33 F.4th at 221 (Jones, J., concurring).

**1.** The Constitution guarantees that "[n]o money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. art. I, § 9, cl. 7. This Appropriations Clause "embodies a fundamental separation of powers principle—subjugating the executive branch to the legislature's power of the purse." *All American*, 33 F.4th at 221 (Jones, J., concurring). The Clause ensures both (i) that Congress assume "a supervisory role over the executive branch," and (ii) that "appropriations for executive operations must be temporally limited." *Id.* at 225; *see id.* at 225-37 (surveying historical sources).

The CFPB transgresses both of these principles. Led by a director who possesses "unilateral, perpetual authority to requisition up to twelve percent annually from the Federal Reserve's budget," *id.* at 221, 233, and as an agency that itself boasts that it has "full independence" from Congress because it is entitled to "funding outside the congressional appropriations process," *The CFPB Strategic Plan, Budget, and Performance Plan and Report* 81 (Apr. 2013), the CFPB violates this very "cornerstone of the separation of powers." *All American*, 33 F.4th at 225, 227 (Jones, J., concurring).

*First*, the CFPB's budgetary independence robs Congress of its supervisory role—which in turn robs the People of a crucial check in "preserv[ing] [their] liberty." *Id.* at 221. Unlike the typical agency, which is dependent on Congress for annual funding (and thus which can be substantively checked and balanced each year, *see id.* at 230-32), the CFPB has "unilateral, perpetual authority to requisition" money. *Id.* at 233; *see* 12 U.S.C. §§ 5497(a)(1), (d); *see also Seila Law v. CFPB*, 140 S. Ct. 2183, 2193-94 (2020). Congress did this *by design*, "renounc[ing] its own power to review the CFPB's budget." *All American*, 33 F.4th at 233 (Jones, J., concurring); *see* 12 U.S.C. § 5497(a)(2)(C). Indeed, Congress cannot even *indirectly* review the CFPB's budget, because the CFPB's source of funding—the Federal Reserve—"is itself funded outside of the annual appropriations process." *Seila Law*, 140 S. Ct. at 2204. And so, whereas "[o]ther agencies must capitulate to

[Congress's] demands or risk reprisal in the form of blistering budget cuts," the CFPB can act however brazenly it wants, even in the face of later Congresses' or legislators' demands for "an accounting of the CFPB's spending and policies." *All American*, 33 F.4th at 234 (Jones, J., concurring) (collecting examples). Just as the CFPB's independence from the President made it unconstitutional, therefore, so too does the CFPB's financial independence from Congress. *See id.* at 233-34.

Despite recognizing the constitutional problems with the CFPB's "financial freedom"—that the agency "does not even depend on Congress for annual appropriations," which is "'the most compleat and effectual weapon' in representing the interests of the people"—*Seila Law* has, ironically, only made matters worse. 140 S. Ct. at 2203-04. "[T]he CFPB Director's newfound presidential subservience [given by *Seila Law*] exacerbates the constitutional problems arising from the CFPB's budgetary independence because it more completely unites the powers of the purse and sword in the President's hands," something "[t]he Appropriations Clause forbids." *All American*, 33 F.4th at 234 (Jones, J., concurring). Now, when the CFPB exercises its unprecedentedly broad powers, it "possess[es] an unbounded power over the public purse of the nation; and might apply all its monied resources at his pleasure." *U.S. Dep't of Navy v. Fed. Lab. Rels. Auth.*, 665 F.3d 1339, 1347 (D.C. Cir. 2012) (Kavanaugh, J.) (collecting cases and quoting 3 JOSEPH STORY,

COMMENTARIES ON THE CONSTITUTION § 1342, at 213-14 (1833)).  The CFPB thus still has "a most dangerous discretion."  *Reeside v. Walker*, 52 U.S. 272, 291 (1850).

*Second*, the CFPB's funding structure, in addition to eliminating Congress's supervisory role over the executive branch in this important sphere, also violates the principle of "temporally limited" appropriations.  *All American*, 33 F.4th at 225 (Jones, J., concurring).  "A time limit is inherent in the idea of assigning fiscal matters exclusively to Congress, that is, forcing the executive to come 'cap in hand' to the legislature at regular intervals."  *All American*, 33 F.4th at 232 (Jones, J., concurring).  Else, "the agency is no longer dependent and, as a result, no longer accountable."  *Id.*; *see id.* at 226-32 (collecting historical sources).  Yet the CFPB is "perpetually" funded, severing the agency's dependency and rendering it no longer accountable.  *Id.*

Given this, it should come as no surprise that "the CFPB's funding structure is wholly unprecedented," *All American*, 33 F.4th at 225 (Jones, J., concurring)—itself a critical consideration in separation-of-powers cases, *id.* at 235-37; *see, e.g.*, *Seila Law*, 140 S. Ct. at 2201.  "Prior to enacting the CFPB, Congress has utilized self-funding in only a limited number of narrowly-focused independent agencies."  *All American*, 33 F.4th at 235 (Jones, J., concurring) (internal quotation marks omitted).  And these narrowly focused agencies are "hardly comparable," with none possessing the "vast rulemaking, enforcement, and adjudicative authority" of the

CFPB, and none "doubly insulated from the appropriations process." *Id.* at 235-36. For example, the CFPB points to the U.S. Postal Service for precedent. But a mailman cannot destroy a small business.

**2.** The remedy for this separation-of-powers violation is dismissal. "An agency's funding is the very lifeblood that empowers it to act"; the agency cannot sue without using its unconstitutionally obtained funds. *All American*, 33 F.4th at 241 (Jones, J., concurring). The only meaningful relief when a defendant raises this defect as a defense, therefore, is straightforward: "Because the CFPB has prosecuted this enforcement action using funds derived without a constitutionally footed appropriation or oversight, the court should dismiss the enforcement action." *Id.* at 242; *accord Seila Law*, 997 F.3d at 839 (Bumatay, J., dissental).

This Court's decision not to order dismissal in *Seila Law* or *CashCall* changes nothing. "[N]ot every separation of powers violation is created equal." *All American*, 33 F.4th at 241 (Jones, J., concurring). Instead, "[t]he proper remedy in a separation of powers case depends on the nature of the underlying problem." *Id.* And whatever is true of the nature of the constitutional violation at issue in *Seila Law* and *CashCall*, the constitutional violation "flowing from the CFPB's budgetary independence concerns the CFPB's authority to act," preventing it from lawfully "exercis[ing]" its authority. *Id.* at 241-42; *accord, e.g.*, *NLRB v. Noel Canning*, 573

U.S. 513, 557 (2014); *FEC v. NRA Pol. Victory Fund*, 6 F.3d 821, 822 (D.C. Cir. 1993). Thus, dismissal follows.

**3.** The CFPB's counterarguments (*see, e.g.*, Doc. 105 (Rule 28(j) Letter)) do not persuade for the reasons explained by Judge Jones, 33 F.4th at 237-40, and that will be further explained in Nationwide's response and reply briefs.

One argument in particular, though, is worth refuting now. As it did in its main brief, the CFPB again insists that Nationwide "waived" this constitutional argument. Doc. 105. But Nationwide did—and is doing—the opposite of waiving (*i.e.*, intentionally relinquishing) this argument: We have pressed it at every stage, and we are devoting thousands of words to it in these supplemental briefs. *See, e.g.*, First-Step Br. 81; CA9 Docs. 70 (October 2019 Letter), 77 & 79 (July Letters to this Court); D.Ct. Docs. 82 at 10 (Answer), 309 at 141-42 (Closing Argument), 314 at 48-50 (briefing). The CFPB knows this issue well; responded to it on the merits in its main brief (Second-Step Br. 76-77); and surely will respond much more to it in these supplemental briefs. This case is thus neither one in which the Court will have to "do [the] appellant's work for it' by 'manufacturing its legal arguments," *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir. 2012), nor one in which the CFPB is at all prejudiced. There was no waiver.

Regardless, though, the Court still has the discretion to reach this argument, even if it were forfeited. For support, look no further than what the CFPB itself said

when trying to excuse its (real) waiver of one of its cross-appeal arguments: "This Court has discretion to make an exception to waiver [when] the issue 'is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.'" Fourth-Step Br. 12 (collecting cases). This exception squarely applies to the CFPB's constitutional violation, as the issue is purely one of law and is unaffected (or adequately developed) by the record below. This Court thus can—and should—recognize the agency's constitutional defects and dismiss this action accordingly.

\* \* \*

"The CFPB's double insulation from Article I appropriations oversight mocks the Constitution's separation of powers by enabling an executive agency to live on its own in a kingly fashion," not unlike Goliath. *All American*, 33 F.4th at 242 (Jones, J., concurring). David (here, Dan Lipsky) deserves dismissal.

## B. The CFPB Director's For-Cause Removal Restriction Violates the Constitution and Requires Dismissal.

The constitutional defect found in *Seila Law* likewise requires dismissal, independent of the CFPB's unconstitutional funding mechanism.

**1.** For the reasons explained in Nationwide's earlier supplemental brief (Doc. 87), "the CFPB was not duly constituted as 'part of the Executive Branch' for Article III standing purposes." *Seila Law*, 997 F.3d at 842 n.3 (Bumatay, J., dissental). *CashCall*'s single-sentence, "drive-by jurisdictional ruling[]," on the budgetary-

9

independence rather than *Seila Law* issue, "has no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998); *see also* Third-Step Br. 18 (collecting cases).

**2.** Even if the CFPB had standing, the Director's insulation when the CFPB instituted and maintained this action would require dismissal.

*Seila Law* and *CashCall*, it's true, rejected similar arguments. Each was wrong to do so. *See, e.g.*, *Seila Law*, 997 F.3d at 839 (Bumatay, J., dissental); Doc. 87 (Nationwide's *Seila Law* Supplemental Br. 7-20). But each is distinguishable.

*Seila Law* required a "valid[] ratification[]" to "remed[y]" the defendant's "constitutional injury." 997 F.3d at 846. Even if there were one in *Seila Law*, there is not one here, because this one "simply came too late in the day to be effective." *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994); *see* Doc. 99 (Nationwide Letter) (explaining this distinction).

*CashCall*, for its part, seemed to interpret *Collins v. Yellen*, 141 S. Ct. 1761 (2021), as holding that ratification is unnecessary in this kind of case, but that reads too much into *Collins*. *Collins* held nothing about how to treat *a defendant's* constitutional defense *in an enforcement action*, because *Collins* was not an enforcement action. To the contrary, it dealt with the proper remedy when the separation-of-powers issue is raised by *the plaintiff*, and, moreover, by a plaintiff *seeking massive monetary compensation*. A different analysis applies here, where

10

the issue is raised as a shield, not a sword. "[W]hen a party raises a constitutional challenge as a defense to a federal enforcement action, 'no theory . . . would permit [a court] to declare the [agency's] structure unconstitutional without providing relief to the [injured party].'" *Seila Law*, 997 F.3d at 843 (Bumatay, J., dissental).

But even under *CashCall*'s overread of *Collins*, the *Seila Law* violation warrants dismissal here. In *CashCall*, "no one suggest[ed] that" the Director's for-cause removal restriction could meet *Collins*'s "actual harm" showing. 35 F.4th at 743. Here, however, Nationwide makes that argument—and can make that showing.

*Collins* provided two non-exhaustive situations in which an injured party can show actual harm: (1) "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal," and (2) "the President made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." 141 S. Ct. at 1789. These examples share a common theme, providing a standard for courts: If a party can show an unconstitutional removal restriction hindered the President from firing a director, they are entitled to relief.

That is the case here. President Trump openly wanted to remove Director Cordray while this action was pending and before the appeal, but the Director's unconstitutional removal restriction and a court order hindered him from doing so.

Cordray himself admitted that "the threat that I would be fired as soon as President Trump took office loomed over everything." RICHARD CORDRAY, WATCHDOG: HOW PROTECTING CONSUMERS CAN SAVE OUR FAMILIES, OUR ECONOMY, AND OUR DEMOCRACY 185 (2020). Cordray even hired a lawyer to "prepare a lawsuit to contest a firing." *Id.* Trump had no qualms, either, about making public his wishes to fire Cordray. *See, e.g.*, *id.* at 198; Kate Berry, *In Tell-All, Ex-CFPB Chief Cordray Claims Trump Nearly Fired Him*, AMERICAN BANKER (Feb. 27, 2020), https://bit.ly/2TrZ7Gc; Kayla Tausche, *Trump Wants to Sack Consumer Chief but Is Afraid of Turning Him into a Hero for the Left*, CNBC (Nov. 13, 2017), https://cnb.cx/3iChAbR.

So why didn't Trump fire Cordray? Shortly after Trump's inauguration, the CFPB petitioned the D.C. Circuit to rehear *en banc* a panel decision striking down the CFPB's unconstitutional structure. *See* Pet. For Reh'g En Banc, *PHH Corp. v. CFPB*, 839 F.3d 1 (D.C. Cir. 2016), Doc. No. 1646917. This "pending request" "made it harder" for Trump to fire Cordray because "doing so would interfere with the court's ongoing review." WATCHDOG, at 187. This, coupled with the reality that nearly every other federal court addressing the issue had upheld the CFPB Director's removal restriction, sent a clear message to the White House: the CFPB Director could not be removed without cause. *See CFPB v. Nat'l Collegiate Master Student*

*Loan Tr.*, No. 17-cv-1323, 2021 WL 1169029, at *6 n.7 (D. Del. Mar. 26, 2021) (listing cases where federal courts upheld the CFPB Director's removal restriction).

President Trump thus wanted to remove Cordray but was hindered because of the unconstitutional insulation provision and court decisions interpreting it. This is the very type of actual harm that *Collins* said "clearly" demonstrates harm and warrant retrospective relief. 141 S. Ct. at 1789.

The President's inability to remove the Director was particularly prejudicial to Nationwide: Cordray had a long history of harassing Nationwide. As Ohio Attorney General, Cordray brought his first civil action against Nationwide. That suit ended when Cordray "APPROVED AND AGREED TO" an Agreed Entry with Nationwide regarding all of its business practices (without any finding that Nationwide had violated the law). *See State of Ohio v. Nationwide Biweekly Admin.*, No. 2008 CV 0678 (Greene Cty, Feb. 10, 2010); TR 520-648; ER 1418.

After becoming CFPB Director, Cordray wanted another bite at the apple. This time on behalf of the CFPB, he commenced another action against Nationwide. And he concurrently issued a press release labeling Nationwide and Mr. Lipsky as having "[taken] advantage of consumers," made "false promises," and carried out "illegal and deceptive practices." ER 1268-70; TR 1180-82. In this press release, Cordray declined to mention that his statements were mere allegations. *Id.* This caused Nationwide to immediately receive letters from its banking partners advising

13

that they were terminating banking services—before any liability determination. TR 1139-42. As a result, Nationwide was forced to suspend the accounts for all of its approximately 135,000 customers, effectively shutting business operations down. TR 1147-50.

The CFPB will likely argue its unconstitutional removal restriction entitles Nationwide to dismissal only if it can demonstrate that *but-for the provision*, the CFPB would have not brought or continued the enforcement action or appeal. But that is not what the Court said in *Collins*. The Court's non-exhaustive examples establish injury when the President desired to fire the agency director as a general matter. The Court (as opposed to Justice Kagan's separate opinion) did not require a counterfactual analysis of how specific cases would be decided had the President successfully removed the Director. Such a requirement (which Nationwide could meet anyway, given its history with Cordray) would contravene the "Supreme Court's admonition that courts should 'create incentives to raise' separation of powers challenges by providing adequate remedies." *All American*, 33 F.4th at 241 (Jones, J., concurring). Here, Nationwide demonstrates that the CFPB's unconstitutional removal restriction hindered President Trump from firing Cordray—a Director with a personal connection with Defendants—which requires the Court to dismiss the CFPB's enforcement action.

14

## II. THE COURT SHOULD REJECT THE CFPB'S CROSS-APPEAL ARGUMENTS RELATING TO RESTITUTION.

The CFPB cross-appealed seeking an additional $74 million in what it says is "mandatory" restitution. But it argued the exact opposite below—that restitution under the CFPA is equitable and discretionary—which precludes it from making the new argument here. Third-Step Br. 31, 33-34.

This argument fails anyway, as recent cases confirm. Restitution under the Act is discretionary, and the district court did not abuse its discretion.

### A. A District Court Has Discretion Under the CFPA Relating to Restitution.

On appeal, the CFPB reasons that restitution under the CFPA is "legal" and thus "mandatory." CFPB Second-Step Br. 86. For starters, though, the conclusion that "legal" restitution is necessarily "mandatory" does not follow: "*legal* restitution is not the same as *mandatory* restitution." Third-Step Br. 34-36 (collecting authorities). Instead, the text of the statute and this Court's precedent show that restitution under the Act, whether labeled "legal" or "equitable," is *discretionary*. Third-Step Br. 31-33; *see* 12 U.S.C. § 5565(a)(1) (the relief "may," not must, include restitution, and the court may grant "*appropriate* legal *or* equitable relief"). Precedent in other areas confirms as much: Courts treat relief under statutes with similar language as discretionary. *See, e.g.*, *McKennon v. Nashville Banner Pub.*

*Co.*, 513 U.S. 352, 357-58 (1995) (ADEA); *Park, ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006) (IDEA).

If more confirmation were needed that CFPA restitution is discretionary, *CashCall* provided it. Although the panel reversed the district court's denial of restitution, it did so not because restitution was "legal" or "mandatory," but instead because that district court (unlike this one, *see* Section II.B, *infra*) "abuse[d] [its] discretion." 35 F.4th at 749; *see also id.* ("emphasiz[ing]" that "restitution is [not] necessarily appropriate" even in that case).

Even if the pertinent distinction *were* whether restitution is "legal" or "equitable" (as opposed to mandatory or discretionary), moreover, *Liu v. SEC*—which held that relief in the form of a defendant's "net profits," "awarded for victims" in a governmental suit, is "equitable"—shows that this restitution is equitable. 140 S. Ct. 1936, 1940-46 (2020). *Liu* traced the history of this relief, often called "restitution," explaining that it "in substance amount[s] to profits that merely deprive a defendant of the gains of wrongful conduct." *Id.* at 1940 (cleaned up). It may be awarded in "the chancellor's discretion to prevent unjust enrichment," and is designed to "strip wrongdoers of their ill-gotten gains." *Id.* at 1941-42.

Just so here with the CFPB's sought restitution. It too seeks the defendants' supposedly "ill-gotten gains," which is "a mainstay of equity courts," *id.* at 1942-43. *See, e.g.*, Second-Step Br. 20, 92-93 ("unjust gains"). The CFPB tries to make

16

something of the supposed need to trace the gains to "particular funds or property in the defendant's possession," *e.g.*, Fourth-Step Br. 13, but that did not matter to *Liu*. Under *Liu*, it's much simpler: if the "restitution [tries to] simply restore[] the status quo"—as the CFPB's sought restitution does—it falls "squarely within the heartland of equity." 140 S. Ct. at 1943. Under all analyses, therefore, the district court had the discretion to impose restitution—or not.

## B. The District Court Acted Within its Discretion in Denying Restitution.

The district court properly exercised its discretion by denying restitution in this case, because (among other reasons and unlike *CashCall*) the CFPB failed to show that the $74 million it sought—an "all-or-nothing" amount linked solely with the amount in setup fees consumers paid, TR1237—"reasonably approximates the defendant's unjust gains." 35 F.4th at 751. All agree it was the CFPB's step-one burden to show an amount reasonably and causally connected to a violation found by the court, *see Liu*, 140 S. Ct. at 1942; "the district court could not award restitution for a violation it concluded the Bureau did not prove." CFPB Fourth-Step Br. 7. Yet here, the CFPB's restitution amount was causally connected *only with* a violation *it did not prove*: that the set-up fees were deceptive. *See* ER34; Second-Step Br. 9 n.3, 14. The set-up fees were "clearly disclosed," ER8, which alone was enough to deny the restitution the CFPB sought. *See id.* at 20; *see also* Third-Step Br. 36-38. Restitution is "inappropriate" when, as the CFPB puts it, there was no "violation and

17

resulting harm."  Second-Step Br. 20; *see United States v. Berger*, 473 F.3d 1080, 1106-07 (9th Cir. 2007) (collecting cases).

That makes this case quite unlike *CashCall*, where the district court denied restitution while giving "dispositive weight to CashCall's lack of bad faith," which the panel clarified "is not required for an award of restitution."  35 F.4th at 751.  The district court here did not think a lack of bad faith was "dispositive."  So too with "benefit of the bargain," *id.* at 751, which was only one of the district court's many considerations here and which was in fact relevant given the differences between this case and *CashCall*.

\*   \*   \*

This Court should reject the CFPB's breathtakingly broad view of restitution—that once it establishes a violation, any violation, the district court must order the entire amount of money the agency seeks, no matter whether the violation had a causal connection with the fees sought.  *Liu* confirms this as wrong, and *CashCall* confirms restitution as discretionary.  Here, where the CFPB did not establish the violation with which it linked restitution, no restitution was proper— and it certainly was within the district court's discretion to so hold.

## CONCLUSION

For these reasons, this Court should dismiss the CFPB's enforcement action and should in no event force restitution.

June 21, 2022                          Respectfully submitted,

                                       /s/ James R. Saywell

Helen Mac Murray                       James R. Saywell
Lisa A. Messner                        H. Cole Hassay
Mac Murray & Shuster, LLP              JONES DAY
6525 West Campus Oval, Suite 210       901 Lakeside Avenue East
New Albany, OH 43054                   Cleveland, Ohio 44114
hmacmurray@mslawgroup.com              Tel: (216) 586-3939
Telephone: (614) 939-9955              Fax: (216) 579-0212
Fax: (614) 939-9954                    jsaywell@jonesday.com

                                       *Counsel for Nationwide Biweekly, et al.*

19

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of this Court's order because it contains 4,188 words (not exceeding 4,200 words). *See* Doc. 106.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2016, in Times New Roman style, 14-point font.


June 21, 2022                                     <u>/s/ James R. Saywell</u>

                                                  James R. Saywell

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 21, 2022, I electronically filed the original of this brief with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all attorneys of record by operation of the Court's electronic filing system.

<u>/s/ James R. Saywell</u>

James R. Saywell