**Nos. 18-15431, 18-15887**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CONSUMER FINANCIAL PROTECTION BUREAU,
Plaintiff-Appellee/Cross-Appellant,

*v.*

NATIONWIDE BIWEEKLY ADMINISTRATION, INC.;
LOAN PAYMENT ADMINISTRATION LLC; DANIEL LIPSKY,
Defendants-Appellants/Cross-Appellees.

On Appeal from the United States District Court
for the Northern District of California
Hon. Richard Seeborg
Case No. 3:15-cv-02106-RS

## SUPPLEMENTAL BRIEF OF
## PLAINTIFF-APPELLEE AND CROSS-APPELLANT
## CONSUMER FINANCIAL PROTECTION BUREAU

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Acting Deputy General Counsel*
Kristin Bateman
  *Acting Assistant General Counsel*
Christopher Deal
Thomas McCray-Worrall
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-9683 (telephone)
(202) 435-7024 (facsimile)
thomas.mccray-worrall@cfpb.gov

June 21, 2022

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ i

INTRODUCTION ..................................................................1

BACKGROUND ...................................................................2

    A.  Procedural History.........................................................2

    B.  This Court's Decision in *CFPB v. Seila Law*................................4

    C.  This Court's Decision in *CFPB v. CashCall* ...............................5

ARGUMENT ......................................................................7

I.  *Collins* and *CashCall* confirm that the unconstitutional removal provision does not support dismissal of this enforcement action. ................................7

II. *CashCall* compels reversal of the district court's denial of restitution. .............12

    A.  *CashCall* confirms that it was improper to deny restitution on the ground that Nationwide's deceptive statements had some basis in "literal truth." .......13

    B.  *CashCall* also confirms that the Bureau met its burden to establish the appropriate restitution amount..........................................................15

CONCLUSION ...................................................................18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Albemarle Paper Co. v. Moody*,
  422 U.S. 405 (1975) .................................................................... 13, 14

*Calcutt v. FDIC*,
  --- F.4th ----, 2022 WL 2081430 (6th Cir. June 10, 2022) ............................ 10, 12

*CFPB v. CashCall, Inc.*,
  35 F.4th 734 (9th Cir. 2022) ........................................................ *passim*

*CFPB v. CashCall, Inc.*,
  2018 WL 485963 (C.D. Cal. Jan. 19, 2018) ........................................16

*CFPB v. Seila Law LLC*,
  997 F.3d 837 (9th Cir. 2021) ..................................................4

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ..................................................... *passim*

*FTC v. Pantron I Corp.*,
  33 F.3d 1088 (9th Cir. 1994) ...................................................14

*Kaufmann v. Kijakazi*,
  32 F.4th 843 (9th Cir. 2022) ....................................................6

*Seila Law LLC v. CFPB*,
  140 S. Ct. 2183 (2020) .................................................... 3, 11

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013) ...............................................................10

**Statutes**

12 U.S.C. § 5511(a) ...........................................................11

12 U.S.C. § 5511(b)(2) ........................................................14

12 U.S.C. § 5565(a)(2) ........................................................14

i

# INTRODUCTION

Congress created the Consumer Financial Protection Bureau to ensure the uniform and effective enforcement of the consumer financial laws. Consistent with that mandate, the Bureau brought this law enforcement action in 2015 against Appellants and Cross-Appellees Nationwide Biweekly Administration, Inc.; Loan Payment Administration LLC; and Daniel Lipsky (collectively, "Nationwide") for deceiving consumers about a mortgage payment product for which consumers paid over $73 million in fees. After a bench trial, the district court found that Nationwide had, in fact, violated the consumer laws. Among other things, Nationwide misled consumers into thinking that its program would help them save thousands of dollars in interest within two years. In reality, it took several years for Nationwide's program to provide a typical customer with anything more than minimal savings.

Among other things, this appeal is about (1) whether the existence of an unconstitutional (and therefore inoperative) removal provision in the Bureau's organic statute gives Nationwide a free pass for its misconduct and (2) whether Nationwide should be excused from returning to consumers the millions of dollars in fees they paid for the product that Nationwide deceptively touted. Two recent cases, *Collins v. Yellen*, 141 S. Ct. 1761 (2021), and *CFPB v. CashCall, Inc.*, 35 F.4th 734 (9th Cir. 2022), control the resolution of these issues. First, *Collins* and

1

*CashCall* compel the conclusion that the Bureau's enforcement action should not be dismissed because the Bureau has always had the authority to bring this case and press this appeal. Second, *CashCall* requires reversal of the district court's decision to deny restitution of the amounts that consumers paid Nationwide for its deceptively advertised mortgage program.

## BACKGROUND

### A. Procedural History

This appeal arises from an enforcement action that the Bureau brought against Nationwide in 2015 for deceptive practices in the marketing and sale of a biweekly mortgage payment product that Nationwide dubbed the "Interest Minimizer Program." ER-16, 18. The Bureau filed its complaint under the leadership of Director Richard Cordray (who was lawfully appointed by President Obama, the then-sitting President). After a bench trial, the district court found in 2017 that Nationwide engaged in deceptive and abusive conduct in violation of the Consumer Financial Protection Act (CFPA) and the Telemarketing Sales Rule. ER-25–32, 34 n.24. In light of these violations, the court imposed a $7.93 million civil penalty but denied the Bureau's request for an award of restitution that would require Nationwide to pay back the fees consumers paid for Nationwide's deceptively marketed program. ER-38. In 2018, Nationwide filed a timely notice of appeal, and the Bureau, then under the leadership of Acting Director Mick

Mulvaney (who was lawfully appointed by then-sitting President Trump), filed a timely cross-appeal to challenge the denial of restitution. ER-64, SER-1. On appeal, Nationwide (cursorily) asserted that the action against it had to be dismissed because a provision of the CFPA unconstitutionally purported to limit the President's authority to remove the Bureau's Director. ECF No. 29-1 at 81.

After briefing on this appeal was completed, the Supreme Court held in *Seila Law LLC v. CFPB* that the removal provision violated the separation of powers because it impedes the President's executive authority under Article II. 140 S. Ct. 2183, 2197 (2020). The Court also held that the provision was severable from the rest of the Bureau's statute, thus rejecting the claim that the "offending removal provision means the entire agency is unconstitutional and powerless to act." *Id.* at 2208, 2211 (plurality op.); *see also id.* at 2245 (Kagan, J., dissenting in part and concurring with respect to severability). The Court did not decide what impact the unconstitutional removal provision had on the civil investigative demand challenged in that case, and instead remanded to allow this Court to consider the Bureau's arguments that the demand could still be enforced because it had been ratified by an official fully accountable to the President. *Id.* at 2208 (plurality op.).

In the wake of the Supreme Court's ruling confirming that she was removable at will, Director Kathleen Kraninger (who was lawfully appointed by then-sitting President Trump) considered the bases for the Bureau's decisions in

3

this case, and formally ratified those decisions on July 13, 2020. *See* ECF No. 78, at 4-5. Since then, the Bureau has continued to pursue this appeal under the leadership of Acting Director David Uejio and Director Rohit Chopra (each of whom was lawfully appointed by President Biden). After argument, the Court vacated submission of this case pending this Court's decisions in *CFPB v. Seila Law*, No. 17-56324, and *CFPB v. CashCall, Inc.*, No. 18-55407. *See* ECF Nos. 97, 101.

## B. This Court's Decision in *CFPB v. Seila Law*

On remand in *Seila Law*, this Court held that Director Kraninger's ratification of the issuance of a civil investigative demand (and of the Bureau's subsequent efforts to enforce that demand)—at a time when she "knew that the President could remove her with or without cause"—"remedies any constitutional injury that Seila Law may have suffered" due to the unconstitutional removal provision. 997 F.3d 837, 846 (9th Cir. 2021). In reaching this conclusion, this Court rejected the argument that "until the Supreme Court invalidated the for-cause removal provision, the CFPB was exercising executive power unlawfully, which in turn rendered all of the agency's prior actions void at the time they were taken." *Id.*

### C. This Court's Decision in *CFPB v. CashCall*

In *CashCall*, this Court considered a Bureau enforcement action that (like this one) the Bureau (then led by Director Cordray) initiated during President Obama's administration and in which the Bureau (then led by Acting Director Mulvaney) filed a timely notice of appeal during President Trump's administration. As in this case, the defendants in *CashCall* argued that the unconstitutional removal provision meant that the case against them had to be dismissed, and that the ratification by a Director unquestionably removable at will by President Trump did not suffice to remedy any constitutional injury that the removal provision had caused. *See* 35 F.4th at 742.

This Court rejected that argument and held that the removal provision provided no basis to dismiss the action. *Id.* at 742-43. To begin, this Court explained that the Supreme Court's intervening decision in *Collins v. Yellen* "made clear that despite the unconstitutional limitation on the President's authority to remove the Bureau's Director, the Director's actions were valid when they were taken." *Id.* at 742. Thus, it was "unnecessary to consider ratification." *Id.* The Court explained, moreover, that to obtain relief for a past agency action under *Collins*, "at a minimum, the 'party challenging an agency's past actions must . . . show how the unconstitutional removal provision *actually harmed* the party.'" *Id.*

5

(quoting *Kaufmann v. Kijakazi*, 32 F.4th 843, 849 (9th Cir. 2022)). The defendants in *CashCall* did not make that showing. *Id.* at 743.

In *CashCall*, the Court also reviewed the district court's denial of restitution for violations of the CFPA. *Id.* at 749-51. On that issue, this Court held that the district court's stated reasons for denying restitution constituted reversible error for at least two reasons relevant here. First, the Court held that the defendants' "lack of bad faith" was not "an appropriate basis for denying restitution." *Id.* at 750-51. This is because a decision whether to award restitution "must be made consistent with the statute," and the CFPA's provision for restitution aims to "ensure that consumers are made whole when they have suffered a violation of the statute." *Id.* at 750. Denying restitution because the defendants did not act in "bad faith" would impermissibly "make the restitutionary remedy punishment for moral turpitude, rather than a compensation for consumers' injuries." *Id.* at 751 (cleaned up). That, in turn, would "would frustrate Congress's objective of compensating consumers who suffered harm on account of [defendants'] deceptive practices." *Id.*

Second, *CashCall* held that the district court erred by deviating from this Circuit's burden-shifting framework for calculating restitution. Under the first step of that framework, the Bureau "bears the burden of proving that the amount it seeks in restitution reasonably approximates the defendant's unjust gains." *Id.* (cleaned up). At that step, courts may use "net revenues as a basis for measuring

6

unjust gains," which typically are "the amount consumers paid for the product or service minus refunds and chargebacks." *Id.* (cleaned up). The burden then "shifts to the defendant to demonstrate that the net revenues figure overstates the defendant's unjust gains." *Id.* (cleaned up). But the district court in *CashCall* deviated from that framework, faulting the Bureau for not making deductions from the defendants' net revenues to establish "the amount of restitution that would be appropriate." *Id.* While it was "[p]erhaps" possible that "net revenues would overstate [the defendants'] unjust gains," that "was [defendants'] burden to prove" and thus constituted reversible error. *Id.* On these bases, the Court remanded for the district court to assess anew whether restitution was appropriate and, if so, in what amount. *Id.*

## ARGUMENT

**I.** ***Collins* and *CashCall* confirm that the unconstitutional removal provision does not support dismissal of this enforcement action.**

1. The Supreme Court's decision in *Collins* and this Court's decision in *CashCall* foreclose Nationwide's argument that this enforcement action should be dismissed due to the existence of an unconstitutional (and therefore inoperative) removal provision in the Bureau's organic statute. *Collins* and *CashCall* conclusively establish that, throughout this case, each of the Bureau's Directors had the authority to carry out the functions of the office. As a result, the challenged actions taken by those Directors in this case—initiating this action and

7

filing the notice of appeal—"were valid when they were taken," and the removal provision supplies no ground for dismissal. *CashCall*, 35 F.4th at 742.

In *Collins*, the Supreme Court had considered an unconstitutional removal restriction that applied to the Director of the Federal Housing Finance Agency (FHFA). *Collins*, 141 S. Ct. at 1783-89. *Collins* "h[e]ld that the unconstitutionality of the removal restriction did *not* invalidate any actions taken by the Director" and that "'[a]ll the officers who headed the [agency] during the time in question were properly appointed.'" *CashCall*, 35 F.4th at 742 (quoting *Collins*, 141 S. Ct. at 1787). As a result, the *Collins* Court "saw 'no basis for concluding that any head of the [agency] lacked the authority to carry out the functions of the office.'" *Id*. (quoting *Collins*, 141 S. Ct. at 1788).

"The same [was] true" in *CashCall*. *Id*. There, like here, the defendants did "not dispute that both the complaint and the notice of appeal were filed while the Bureau was headed by a lawfully appointed Director." *Id*. And, "[a]s in *Collins*, 'the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office.'" *Id.* (quoting *Collins*, 141 S. Ct. at 1788 n.23). *CashCall* recognized that, under *Collins*, a party may in some cases nonetheless obtain relief from a past agency action—but only if, "at a minimum," that party can "show how the unconstitutional removal provision *actually harmed* the party." *Id.* (cleaned up). The *CashCall* Court noted that "a

party might demonstrate harm by showing that the challenged action was taken by a Director whom the President wished to remove but could not because of the statute." *Id.* at 743. However, there was no suggestion in *CashCall* "that anything of the sort happened here." *Id.* This Court accordingly deemed it "unnecessary" even "to consider ratification": "With or without Director Kraninger's ratification, this action was validly initiated, and the notice of appeal was validly filed." *Id.* at 742-43.

The same result follows here. In this case, just as in *CashCall*, the Bureau validly initiated an enforcement action under the leadership of Director Cordray (who was properly appointed by then-sitting President Obama). Just as in *CashCall*, the Bureau validly filed a notice of appeal under the leadership of Acting Director Mulvaney (who was properly appointed by then-sitting President Trump). And there is no evidence that the removal provision had any different effect on this case than it did in *CashCall*, let alone that the provision "*actually harmed*" Nationwide here. *Id.* at 742.

Indeed, the removal provision had no effect whatsoever on the Bureau's complaint against Nationwide or on its appeal to this Court. After all, immediately after the Supreme Court held the removal provision unconstitutional, Director Kraninger (who was properly appointed by then-sitting President Trump) formally approved of her predecessors' decisions to file this case and press this appeal. In

9

all, the Bureau has pursued the same claims against the same defendants under the leadership of five different Directors chosen by three different Presidents without regard to the (real or perceived) status of the removal provision. It is therefore plain that Nationwide cannot show that the provision "*caused*" it "any . . . harm," *Collins*, 141 S. Ct. at 1789 (emphasis added), for the simple reason that Nationwide cannot identify a "harm [that] would not have occurred in the absence of—that is, but for—" the removal provision, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 346-47 (2013) (quotations marks omitted); *accord Calcutt v. FDIC*, --- F.4th ----, 2022 WL 2081430, at *13 (6th Cir. June 10, 2022) (holding that to establish that an unconstitutional removal restriction caused harm under *Collins*, challengers "need to show that the removal restriction *specifically* impacted the agency actions of which they complained").

The application of *Collins* and *CashCall* to this case is clear and straightforward: The Bureau had the authority to bring this action and to pursue this appeal, and the removal provision caused Nationwide no harm. The removal provision therefore provides no basis to dismiss the Bureau's enforcement action.[1]

---

[1] As *CashCall* makes clear, "[w]ith or without Director Kraninger's ratification," the Bureau's enforcement action is not subject to dismissal. 35 F.4th at 743. To the extent that the Court nevertheless considers ratification, this Court's post-remand decision in *Seila Law* likewise precludes dismissal for all of the reasons the Bureau has previously identified. *See* ECF No. 100, at 2-5.

2. The unavailability of dismissal under *Collins* and *CashCall* reflects the nature of the constitutional problem caused by an unconstitutional removal restriction. An unconstitutional removal restriction "is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment)." *Collins*, 141 S. Ct. at 1788-89. That means that, just like the FHFA Directors in *Collins*, every Bureau Director involved here was one "whom the President [could] remove in a manner consistent with the Constitution but did not attempt to do so." *Id.* at 1793-94 (Thomas, J., concurring). The mere existence of the unconstitutional removal restriction does not deprive such properly appointed officers of the authority to constitutionally "undertake the . . . responsibilities of [their] office." *Id.* at 1788 n.23 (majority op.).

Throughout this litigation, therefore, the Bureau's Director had both the authority and obligation to see to it that the Bureau carried out its statutory mission of "seek[ing] to implement and, where applicable, enforce Federal consumer financial law consistently" to "ensur[e] that all consumers have access to markets for consumer financial products and services" that "are fair, transparent, and competitive." 12 U.S.C. § 5511(a); *see also Seila Law*, 140 S. Ct. at 2209 (plurality op.) ("The provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully operative without the offending tenure

11

restriction."). So, with or without the inoperative removal provision, the Bureau did not act unlawfully when it sought to fulfill its statutory mandate by bringing this action against defendants whose deceptive practices violated federal consumer financial law. *See Collins*, 141 S. Ct. at 1789 (Thomas, J., concurring) ("The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract."); *accord Calcutt*, 2022 WL 2081430, at *30, 38 (Murphy, J., dissenting) ("agree[ing]" with majority that challenger could not obtain relief based on unconstitutional removal provision and concluding, after surveying the historical record, that "under traditional remedial rules, unconstitutional removal provisions do not render the offices to which they attach invalid and so do not allow courts to vacate the actions of officers as void in suits by third parties").

The Bureau's case should not be dismissed.

## II.    *CashCall* compels reversal of the district court's denial of restitution.

This Court's decision in *CashCall* similarly controls the resolution of the Bureau's cross-appeal of the denial of restitution. Nationwide misrepresented the benefits its program offered consumers: As the district court held, Nationwide falsely suggested that, by enrolling in Nationwide's program, consumers would achieve thousands of dollars in interest savings in the first two years alone, when in fact their savings would be only "minimal." ER-29. Yet the district court declined

to require Nationwide to pay restitution to reimburse consumers for the fees they paid for that program. Although it is somewhat unclear whether the district court concluded that restitution was not appropriate at all or, instead, that the *amount* the Bureau sought was inappropriate, *see* ECF No. 38 at 85, *CashCall* requires reversal whatever the district court's rationale.

First, to the extent the district court held that restitution was not warranted at all, it appeared to do so on the basis that Nationwide's promises, though deceptive, had a basis in "literal truth." But *CashCall* confirms that such reasoning impermissibly conflicts with the CFPA. Second, to the extent the court denied restitution because it concluded that the Bureau had not established a "just" amount, *CashCall* also makes clear that the district court misapplied the Court's burden-shifting framework. Consistent with *CashCall*, these errors require reversal.

### A. *CashCall* confirms that it was improper to deny restitution on the ground that Nationwide's deceptive statements had some basis in "literal truth."

To the extent that the district court denied restitution because it thought that Nationwide's misrepresentations about the amount and timing of interest savings had a basis in "literal truth," ER-36, *CashCall* requires reversal. As *CashCall* explained, a district court's decision whether to award restitution "must be made consistent with the statute." 35 F.4th at 750 (citing *Albemarle Paper Co. v.*

*Moody*, 422 U.S. 405, 416 (1975); *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1103 (9th Cir. 1994)).  And the CFPA's "express objectives," the Court noted, include ensuring that "consumers are protected from unfair, deceptive, or abusive acts and practices." *Id.* (citing 12 U.S.C. § 5511(b)(2)).  "[T]o achieve those objectives," the CFPA authorizes "restitution" (among other remedies) to ensure that "consumers are made whole when they have suffered a violation of the statute." *Id.* (citing 12 U.S.C. § 5565(a)(2)).

In light of these statutory goals, the Court held, it was improper for the district court in *CashCall* to deny restitution on the ground that CashCall did not act in "bad faith" by "intend[ing] to defraud consumers." *Id.*  Denying restitution on that basis would improperly make restitution a "'punishment for moral turpitude, rather than a compensation' for consumers' injuries." *Id.* at 751 (quoting *Albemarle Paper*, 422 U.S. at 422).  That, in turn, would impermissibly "frustrate Congress's objective of compensating consumers who suffered harm on account of [the defendants'] deceptive practices." *Id.*

In denying restitution because Nationwide's misrepresentations had some basis in "literal truth," the district court here likewise frustrated this statutory objective.  Whether the misrepresentations had any basis in "literal truth" or not, they were still deceptive—and consumers' injury from those deceptive statements was "no less real," *Albemarle Paper*, 422 U.S. at 422.  Denying restitution

14

therefore flouted the CFPA's goal of "ensur[ing] that consumers are made whole."
*CashCall*, 35 F.4th at 750. By the same token, to the extent that the district court
meant to suggest that the "literal truth" of Nationwide's deceptive statements
somehow made Nationwide less culpable, *CashCall* likewise makes clear that that
is not "an appropriate basis for denying restitution," *id.* Restitution is
compensatory, not "punishment for moral turpitude," *id.* at 751 (cleaned up), so the
relative reprehensibility of a defendant's conduct is not an appropriate ground for
denying restitution under the CFPA. For those reasons, under *CashCall*, denying
restitution based on the "literal truth" of Nationwide's deceptive representations
constitutes reversible error.

**B.** ***CashCall* also confirms that the Bureau met its burden to establish
the appropriate restitution amount.**

The decision in *CashCall* also confirms that the Bureau met its burden to
establish the appropriate restitution amount—and that it was therefore improper for
the district court to deny restitution on the ground that the Bureau had not "offered
a basis for any restitution that might be limited in some way so as to make it a just
result," ER-37. The district court's decision conflicted with this Circuit's well-
established burden-shifting framework for calculating restitution, as reiterated
under *CashCall*: At the first step, the Bureau must "prov[e] that the amount it
seeks in restitution reasonably approximates the defendant's unjust gains."
*CashCall*, 35 F.4th at 751. At that step, district courts may use "net revenues as a

15

basis for measuring unjust gains," which typically are "the amount consumers paid for the product or service minus refunds and chargebacks." *Id.* (cleaned up). In other words, in a case like this one—where deceptive statements may have led consumers to pay money to the defendants—the Bureau meets its burden to provide an amount that "reasonably approximates" the defendant's unjust gains by showing how much money the defendants collected from consumers (that is, by establishing the defendants' "net revenues"). *See id.* If the Bureau meets that burden, the burden then "shifts to the defendant to demonstrate that the net revenues figure overstates the defendant's unjust gains." *Id.* (cleaned up).

This Court held that the district court in *CashCall* erred by ruling that the Bureau did not meet its burden under this framework by showing net revenues. Specifically, the district court had held that the Bureau's "proposed restitution amount [should have been] netted to account for expenses." *Id.* at 751 (quoting *CFPB v. CashCall*, 2018 WL 485963, at *13 (C.D. Cal. Jan. 19, 2018)). This Court rejected that holding as "inconsistent with our precedent." *Id.* Rather, the Bureau met its burden by establishing the defendants' "net revenues"—the amounts they collected from consumers subjected to their deceptive practices. *See id.* That was enough to shift the burden to the defendants: "Perhaps net revenues would overstate [the defendants'] unjust gains, but if so, that was [the defendants'] burden to prove." *Id.*

16

Here, as the district court (correctly) concluded, the Bureau "established at trial" the amount of Nationwide's net revenues—*i.e.*, the "revenue from setup fees (less refunds)" paid by consumers to whom Nationwide falsely promised quick and substantial savings. ER-34. Indeed, Nationwide has not disputed that the Bureau accurately established that amount. *See* ER-35. The Bureau therefore satisfied its burden under this Court's burden-shifting framework to "reasonably approximate" Nationwide's unjust gains, and the burden shifted to Nationwide "to demonstrate that the net revenues figure overstates [their] unjust gains." *CashCall*, 35 F.4th at 751 (cleaned up).

But the district court misapplied this Court's framework. It faulted the Bureau for "not offer[ing] a basis for any restitution that might be limited in some way so as to make it a just result." ER-35. That misunderstood the Bureau's burden, which was simply to establish Nationwide's net revenues from the fees paid by consumers subjected to Nationwide's deceptive promises. *See CashCall*, 35 F.4th at 751. The district court suggested that it would be unfair to require Nationwide to return all the fees it obtained from consumers, given that Nationwide may not have "engaged in the type of fraud commonly connoted by the well-worn phrase 'snake oil salesmen'"—and that, instead, it was possible that some consumers may have received some benefit or might have chosen to pay for Nationwide's product anyway. ER-35 (noting that the appropriate relief "may be

17

less than the full measure that would theoretically be available" given that the Bureau had not shown that Nationwide "never provide[d] a benefit to consumers" or that "no fully-informed consumer" would ever buy Nationwide's product). But even assuming that the restitution amount should have been reduced to account for those (potential) facts, it was legally erroneous to deny restitution on the ground that *the Bureau* didn't establish the appropriate reductions. As *CashCall* makes clear, if "net revenues would overstate [defendants'] unjust gains," that "was [defendants'] burden to prove." *CashCall*, 35 F.4th at 751.

Yet Nationwide offered no evidence to establish that its unjust gains (or consumers' losses) were in fact something less than the full amount of fees Nationwide charged. Nationwide therefore did not meet its burden under this Court's burden-shifting framework—and the district court accordingly should have ordered restitution in the full amount of net revenues that the court concluded the Bureau had "established at trial." ER-34. This Court therefore should remand for entry of judgment ordering restitution in that amount.

## CONCLUSION

For the foregoing reasons, this Court should reverse the denial of restitution and remand the case for the district court to order Nationwide Biweekly Administration, Inc., Loan Payment Administration LLC, and Daniel Lipsky to pay restitution in the amount of $73,955,169 or to calculate restitution consistent

18

with the CFPA's remedial provisions and the evidence presented at trial. The

Court should otherwise affirm the district court's orders and judgment.

                                Respectfully submitted,


Dated: June 21, 2022            s/ Thomas McCray-Worrall

                                Seth Frotman
                                   *General Counsel*
                                Steven Y. Bressler
                                   *Acting Deputy General Counsel*
                                Kristin Bateman
                                   *Acting Assistant General Counsel*
                                Christopher Deal
                                Thomas McCray-Worrall
                                   *Senior Counsel*
                                Consumer Financial Protection Bureau
                                1700 G Street, NW
                                Washington, DC 20552
                                (202) 435-9683 (telephone)
                                (202) 435-7024 (facsimile)
                                thomas.mccray-worrall@cfpb.gov

                                *Counsel for Plaintiff-Appellee*
                                *and Cross-Appellant*
                                *Consumer Financial Protection Bureau*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 18-15431, 18-15887

I am the attorney or self-represented party.

**This brief contains** | 4,181 | **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

● complies with the length limit designated by court order dated | May 24, 2022 | .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Thomas McCray-Worrall | **Date** | Jun 21, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** | *Rev. 12/01/2018*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on June 21, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: June 21, 2022                    s/ Thomas McCray-Worrall

Thomas McCray-Worrall
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
(202) 435-9683 (telephone)
(202) 435-7024 (facsimile)
thomas.mccray-worrall@cfpb.gov

*Counsel for Plaintiff-Appellee*
*and Cross-Appellant*
*Consumer Financial Protection Bureau*